**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

TASHAWN MANNING,

Plaintiff,

v.

NFL PLAYER DISABILITY &
SURVIVOR BENEFIT PLAN, et al.,

Defendants.

Civil Action No. 1:26-cv-03256-JRR

Hon. Julie R. Rubin

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

---

Damon R. Miller (No. 30581)
Benjamin Glass, III & Associates, P.C.
3998 Fair Ridge Drive # 250
Fairfax, VA 22033
(703) 591-9829
FAX: (703) 783-0686
dmiller@BenGlassLaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Page

I. Introduction ..... 1

II. Legal Standard ..... 4

III. Statement of Facts ..... 6

(1) The Plan and the "Neutral" Rule ..... 6

(2) Mr. Manning's disability and the Neutral Physician examinations ..... 6

(3) Defendants deny the claim under § 3.1(d) ..... 7

(4) Mr. Manning appeals, and Defendants miss the decision deadline ..... 8

(5) Count II and Defendants' partial motion to dismiss ..... 8

IV. Argument ..... 9

A. Count I cannot remedy the enforcement of a Plan term that ERISA forbids, so relief under § 502(a)(3) is appropriate ..... 9

B. Section 502(a)(3)(A) authorizes the Court to enjoin enforcement of a Plan term that violates ERISA, and no fraud or mistake is required ..... 17

C. The Complaint plausibly alleges that § 3.1(d) conflicts with ERISA's full-and-fair-review requirements ..... 19

D. Count II plausibly alleges that the Board's enforcement of § 3.1(d) is fiduciary conduct ..... 23

E. Mr. Manning does not oppose dismissal without prejudice of the claims-handling theories, which remain before the Court under Count I ..... 25

F. Any dismissal should be without prejudice and with leave to amend ..... 26

V. Conclusion ..... 26

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alford v. NFL Player Disability & Survivor Benefit Plan*, No. 1:23-cv-00358-JRR, 2024 U.S. Dist. LEXIS 50025 (D. Md. Mar. 20, 2024) .......... 10, 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5

*Barnett v. Inova Health Care Servs.*, 125 F.4th 465 (4th Cir. 2025) .......... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) .......... 21

*Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882 (E.D. Va. 2025) .......... 18

*Canada Life Assur. Co. v. Estate of Lebowitz*, 185 F.3d 231 (4th Cir. 1999) .......... 17, 18, 19, 20

*Chao v. Malkani*, 216 F. Supp. 2d 505 (D. Md. 2002) .......... 17

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) .......... 9, 10, 13 n.1, 18, 19

*Cogdell v. Reliance Standard Life Ins. Co.*, 169 F.4th 238 (4th Cir. 2026) .......... 15, 18 n.3, 20

*Davis v. Burlington Indus., Inc.*, 796 F. Supp. 866 (E.D.N.C. 1991) .......... 17

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) .......... 5

*Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228 (4th Cir. 1997) .......... 20

*England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761 (D. Md. 2011) .......... 5, 11, 12, 13, 14

*Enstrom v. SAS Inst. Inc.*, 820 F. Supp. 3d 410 (E.D.N.C. 2026) .......... 18

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) .......... 19, 24

*Foman v. Davis*, 371 U.S. 178 (1962) .......... 26

**Cases:** **Page(s)**

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (en banc) .............................................. 5

*Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*, 505 F. Supp. 3d 594 (E.D.N.C. 2020) ........................................................................................................... 13 n.1

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000) .................... 24, 25

*Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15 (4th Cir. 2014) .............................................. 21

*Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848 (4th Cir. 2023) .................................. 5, 16, 17

*Kelly v. Altria Client Servs., LLC*, 186 F.4th 174 (4th Cir. 2026) ......................................... 16 n.2

*Kelly v. Altria Client Servs., LLC*, No. 3:23-cv-725-HEH, 2024 U.S. Dist. LEXIS 241229 (E.D. Va. Aug. 1, 2024) ........................................................................................................ 16

*Koman v. Reliance Standard Life Ins. Co.*, No. 1:22-cv-595, 2022 U.S. Dist. LEXIS 224017 (M.D.N.C. Dec. 13, 2022) ....................................................................................... 5

*Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101 (4th Cir. 2006) 5, 9, 10, 11, 13 & n.1, 14, 16, 26

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (en banc) ......................................................... 26

*Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739 (2d Cir. 2019) ..................................... 18

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) ...................................................................... 22, 24

*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012) .................................................. 11

*Paul v. Blue Cross Blue Shield of N.C.*, 725 F. Supp. 3d 505 (E.D.N.C. 2024) ........................... 16

*Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021) ........................................................................ 19

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) .................................................. 4

**Cases:** **Page(s)**

*Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023) ................................................ 11, 16, 17

*Smith v. NFL Player Disability & Neurocognitive Benefit Plan*, No. 1-22-CV-00928, 2024 WL 722594 (W.D. Tex. Jan. 9, 2024) ...................................................................... 18 n.3

*Smith v. Sydnor*, 184 F.3d 356 (4th Cir. 1999) ............................................................................. 10

*Suchin v. Fresenius Med. Care Holdings, Inc.*, 715 F. Supp. 3d 703 (D. Md. 2024)............. 13 n.1

*Tillery v. Wakemed Health & Hosps.*, 819 F. Supp. 3d 442 (E.D.N.C. 2026)............................. 17

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .......................................................... 6, 9, 10, 14, 16

*White v. Sun Life Assur. Co.*, 488 F.3d 240 (4th Cir. 2007) ....................................................... 17

**Statutes:**

29 U.S.C. § 1053(a) ........................................................................................................................ 11

29 U.S.C. § 1104(a)(1)(D) ........................................................................... 4, 19, 24, 26, 27

29 U.S.C. § 1110(a) ........................................................................................................................ 19

29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B))........................................................... passim

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ............................................................... passim

29 U.S.C. § 1133.............................................................. 3, 14, 18 n.3, 20, 21, 22, 23, 24

**Regulations:**

29 C.F.R. § 2560.503-1........................................................................ 3, 8, 18, 20, 22, 24

**Rules:**

Fed. R. Civ. P. 8(d)(2)........................................................................................................ 5, 16

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 4, 9

Fed. R. Civ. P. 15(a)(2)........................................................................................................ 26

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Tashawn Manning<br><br>Plaintiff,<br><br>v.<br><br>NFL Player Disability & Survivor Benefit Plan, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>Civ. Action No. 1:26-cv-3256<br><br>Hon. Julie R. Rubin |

**RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Tashawn Manning played professional football for the Baltimore Ravens and the Cincinnati Bengals. (ECF No. 6 ¶¶ 7–8.) Today he lives with severe cognitive impairment. He cannot reliably manage his finances, prepare meals, follow multi-step instructions, or drive on his own. (*Id.* ¶ 44.) His treating neurologist found him totally and permanently disabled. (*Id.* ¶ 34.) The Plan denied his claim anyway, under a rule that, as Defendants read it, bars benefits unless one of the Plan's chosen doctors finds the player disabled. None of the three doctors the Plan chose would say that he was. (*Id.* ¶¶ 83, 88, 91–93, 106–108.) Mr. Manning asks the Court to let him pursue his claim that ERISA prohibits the Plan to enforce that rule against him. The Court should deny Defendants' partial motion to dismiss.

## I. Introduction

Mr. Manning earned bachelor's and master's degrees. Testing now places him below the first percentile in several areas of cognitive function. His score on a standard cognitive screening test fell from 8 to 5 out of 30 in about five weeks. (*Id.* ¶¶ 39–41.) His treating neurologist, board certified in Brain Injury Medicine, diagnosed clinically probable chronic traumatic encephalopathy (CTE), a major neurocognitive disorder caused by repeated head trauma, and

post-traumatic Parkinsonism. He concluded that Mr. Manning cannot work in any occupation and is totally and permanently disabled. (*Id.* ¶¶ 33–34.)

The Plan sent Mr. Manning to three doctors it calls Neutral Physicians. Only one of them thought he could work: a psychiatrist, who said so only "from a psychiatric standpoint." (*Id.* ¶ 83.) The Plan's neuropsychologist recorded scores below the first percentile, yet said he was "unable to determine" whether Mr. Manning was disabled. (*Id.* ¶ 88.) The Plan's neurologist who specializes in nerve and muscle disorders, and who did not review the treating neurologist's records, said the same. (*Id.* ¶¶ 91–93.) The denial pointed to no medical evidence that Mr. Manning could hold a job, and it named no job he could do. (*Id.* ¶¶ 102–103.) Mr. Manning appealed. He submitted a functional capacity evaluation, a neuropsychological evaluation, a vocational evaluation, and an independent neurological examination. Each one concluded that he cannot hold a full-time job. (*Id.* ¶¶ 169–177.) Rather than decide the appeal on that record, Defendants ordered more Neutral Physician exams. Then, before their deadline passed, they admitted they had not reviewed the reports from those exams, and they punted the appeal to a later Board meeting. (*Id.* ¶¶ 179, 187–191.)

The Plan denied the claim because of a single rule. Under Defendants' reading of Plan § 3.1(d), a player cannot receive total and permanent disability benefits unless at least one Neutral Physician concludes that he is totally and permanently disabled. If none does, the player is ineligible "regardless of" any other fact, statement, or determination in the record. (*Id.* ¶¶ 106–108.) Even a yes from a Neutral Physician is not enough. The Board must then agree, after reviewing the entire record, that the player cannot work in any occupation. (ECF No. 13-1 at 12.) Put simply, unless one of the Plan's doctors says yes, the player loses. For Mr. Manning, unable to determine meant deny.

That rule keeps the Plan's decision-maker from doing its job. The Plan's Disability Board decides claims and appeals. (ECF No. 6 ¶¶ 10, 16–17.) Federal law requires the Board to give a denied claim a full and fair review. 29 U.S.C. § 1133(2). The Board must take into account all the evidence the player submits. It must also explain why it disagrees with the player's own doctors. 29 C.F.R. § 2560.503-1(h)(2)(iv), (g)(1)(vii)(A), (j)(6)(i)(A). Section 3.1(d) turns that review upside down. In effect, the Board weighs the player's evidence only if one of the Plan's doctors has already found him disabled. If none has, the rest of the record cannot help him. The Board can deny a claim on the full record, but it cannot grant one. A review that can only confirm a denial is not a full and fair review. That problem does not depend on who the Neutral Physicians are or how they are paid. It comes from what § 3.1(d) lets their conclusions do.

Mr. Manning brings two claims. Count I asks for the benefits he is owed. Count II applies only to the extent Count I cannot provide adequate relief. Count II asks the Court to declare that the Board may not enforce § 3.1(d) against him to the extent § 3.1(d) violates federal law, and to order the Board not to enforce it. Count II also asks, in the alternative, that the Court reform § 3.1(d). (ECF No. 6 ¶¶ 213–215.) Count II does not seek a second payment. Even if Count II succeeds, Mr. Manning must still prove under Count I that he is disabled.

The question matters beyond this case. On Defendants' reading, § 3.1(d) governs every player who applies for total and permanent disability benefits. (*See* ECF No. 13-1 at 26.) Each of those players faces the same barrier. Mr. Manning seeks relief only for himself. But the legal question his claim presents is the same for every player.

Defendants' motion asks the Court never to reach that question. Defendants move to dismiss only Count II, and their motion depends on two positions that cannot both be true. They say Count I gives Mr. Manning a complete remedy. They also say Mr. Manning "cannot qualify

for those benefits under the Plan as written" because no Neutral Physician has found him totally and permanently disabled. Count I, a claim for benefits under ERISA § 502(a)(1)(B), can only enforce the Plan as written. It cannot decide whether federal law allows the Board to enforce § 3.1(d) at all. Answering that question calls for a court order, not a payment of benefits. ERISA provides that kind of order through equitable relief under § 502(a)(3). That is Count II.

A challenge to how the Board weighed Mr. Manning's evidence belongs in Count I, and Mr. Manning will litigate it there. Count II asks a different question. It does not challenge the bargaining parties' decision to adopt § 3.1(d). It challenges the Board's enforcement of § 3.1(d) against Mr. Manning. And it asks whether federal law permits a plan to make the opinion of a physician who is not a plan fiduciary a precondition to benefits "regardless of" anything else in the record, including the Board's own view of the evidence.

Mr. Manning narrows the dispute. He does not oppose dismissal without prejudice of the claims-handling theories in Count II, which the Court will consider under Count I. He also withdraws any loyalty theory and any fiduciary-breach claim against the Plan as an entity. What remains is Mr. Manning's claim under ERISA § 502(a)(3)(A) and 29 U.S.C. § 1104(a)(1)(D) to stop the Board from enforcing § 3.1(d) against him to the extent § 3.1(d) violates ERISA. That claim is not duplicative, does not require fraud or mistake, and is plausibly pleaded. The Court should deny the motion as to that claim and, at a minimum, deny Defendants' request for dismissal with prejudice.

## II. Legal Standard

A motion under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the claims. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Such a motion does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A defense may be decided on the pleadings only if all facts necessary to it "clearly appear[] on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). To survive, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts the well-pleaded allegations as true and draws reasonable inferences in Mr. Manning's favor.

Mr. Manning may bring claims under § 502(a)(1)(B) and § 502(a)(3) at the same time, in the alternative. He pleads Count II only to the extent Count I cannot provide adequate relief. If equitable relief under Count II is necessary to remove an unlawful barrier to benefits, Mr. Manning must still establish entitlement under Count I.

A "plaintiff may plead multiple or alternative claims based on the same facts." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 471 (4th Cir. 2025). An alternative § 502(a)(3) claim survives when it rests "at least in part, on different facts" than the benefits claim, *England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 779 (D. Md. 2011); when the "plaintiff was ineligible for § 1132(a)(1)(B) relief," *Koman v. Reliance Standard Life Ins. Co.*, No. 1:22-cv-595, 2022 U.S. Dist. LEXIS 224017, at *11 (M.D.N.C. Dec. 13, 2022); **or** when it seeks relief a benefits claim cannot give, such as reformation of plan terms. *England*, 764 F. Supp. 2d at 780. *See also* Fed. R. Civ. P. 8(d)(2); *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 855 (4th Cir. 2023) (nothing prevents plaintiffs from "suing under both [ERISA] provisions"). Whether a claim under § 502(a)(3) duplicates a claim under § 502(a)(1)(B) turns on whether the plaintiff's injury is "redressable elsewhere in ERISA's scheme." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101,

106 (4th Cir. 2006). *See also Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (ERISA's "'catchall' provisions act as a safety net, offering appropriate equitable relief").

### III. Statement of Facts

#### (1) The Plan and the "Neutral" Rule

Tashawn Manning played professionally for the Baltimore Ravens and the Cincinnati Bengals and is a participant in the NFL Player Disability & Survivor Benefit Plan. (ECF No. 6 ¶¶ 7–8.) The Disability Board is the Plan Administrator and a named fiduciary. It adjudicates claims and appeals for total and permanent ("T&P") disability benefits, interprets and applies Plan terms, and selects and relies on the physicians who evaluate claims. (*Id.* ¶¶ 10, 16–17.)

Under Defendants' reading of Plan § 3.1(d), a player cannot qualify for T&P benefits unless at least one Plan Neutral Physician concludes that he is totally and permanently disabled. (*Id.* ¶ 106.) On that reading, if no Neutral Physician reaches that conclusion, the player is ineligible "regardless of" any other fact, statement, or determination in the administrative record. (*Id.* ¶ 107.) Defendants describe this provision as the "Neutral Rule" and state that the NFLPA and the NFL Management Council adopted it and designate the Neutral Physicians. (ECF No. 13-1 at 33.)

#### (2) Mr. Manning's disability and the Neutral Physician examinations

Mr. Manning's treating neurologist, Dr. Graham Garrison, is board certified in Brain Injury Medicine. (ECF No. 6 ¶ 33.) Dr. Garrison diagnosed clinically probable chronic traumatic encephalopathy (CTE), major neurocognitive disorder secondary to repetitive head trauma, and post-traumatic Parkinsonism. He concluded that Mr. Manning is totally and permanently disabled from any occupation for remuneration or profit. (*Id.* ¶ 34.) Neuropsychological testing placed Mr. Manning below the **first percentile** in multiple cognitive domains, even though he

earned bachelor's and master's degrees. His Montreal Cognitive Assessment score fell from 8 out of 30 in December 2025 to 5 out of 30 about five weeks later. (*Id.* ¶¶ 39–41.) He cannot reliably manage his finances, prepare meals, follow multi-step instructions, or drive independently. (*Id.* ¶ 44.)

Mr. Manning timely applied for T&P benefits, and Defendants sent him to three Neutral Physicians: psychiatrist Mark Chapman, M.D., neuropsychologist Robert Bornstein, Ph.D., and neurologist Chad Hoyle, M.D. (*Id.* ¶¶ 51–54.) Dr. Chapman opined only "from a psychiatric standpoint" that Mr. Manning could perform a job "in line with his skill set." (*Id.* ¶ 83.) Dr. Bornstein documented scores below the first percentile across multiple domains, yet claimed that he was "unable to determine" whether Mr. Manning was totally and permanently disabled. (*Id.* ¶ 88.) Dr. Hoyle is a neuromuscular specialist without apparent experience in CTE or Parkinsonism. He likewise stated that he was unable to determine disability from a neurological perspective, and he did so without reviewing Dr. Garrison's neurology records. (*Id.* ¶¶ 91–93.)

**(3) Defendants deny the claim under § 3.1(d)**

On January 13, 2026, Defendants denied Mr. Manning's claim. (ECF No. 6 ¶ 101.) The denial identified no affirmative medical evidence that Mr. Manning could sustain an occupation, and it identified no occupation he could perform. (*Id.* ¶¶ 102–103.) Defendants relied instead on § 3.1(d). Because two Neutral Physicians could not reach a conclusion, Defendants treated § 3.1(d) as requiring denial. (*Id.* ¶ 108.) Under Defendants' reading, a treating specialist's opinion, objective cognitive testing, functional and vocational evidence, failed work attempts, and family observations all became legally irrelevant because no Neutral Physician used the magic words § 3.1(d) requires. (*Id.* ¶¶ 109–110.)

**(4) Mr. Manning appeals, and Defendants miss the decision deadline**

Mr. Manning timely appealed on July 10, 2026, and submitted substantial new evidence. The appeal included an independent Functional Capacity Evaluation finding him "unable to meet the demands of full-time sedentary work." It included a forensic neuropsychological evaluation concluding that he is "unable to work in any capacity." It included a vocational evaluation concluding that he "does not possess the functional capacity to perform any occupation in the national economy." And it included an independent neurological examination by Dr. Frank Conidi, who identified MRI findings consistent with traumatic axonal shear injury and concluded that Mr. Manning is not capable of competitive employment. (ECF No. 6 ¶¶ 169–177.)

Rather than decide the appeal on that record, Defendants scheduled additional Neutral Physician examinations. (*Id.* ¶ 179.) The decision was due by August 17, 2026. (*Id.* ¶ 187.) Before that date, Defendants admitted that they had not reviewed the reports of the Neutral Physicians they had commissioned, and they punted the appeal to the Board's November 11, 2026 meeting. (*Id.* ¶¶ 188–191.) When Mr. Manning filed suit, Defendants still had not decided the appeal. The Complaint alleges that Mr. Manning's administrative remedies are therefore deemed exhausted and that the non-decision is a denial made without the exercise of discretion by an appropriate fiduciary. (Id. ¶¶ 201–208.) *See* 29 C.F.R. § 2560.503-1(l)(2).

**(5) Count II and Defendants' partial motion to dismiss**

Count I of the Complaint seeks benefits under § 502(a)(1)(B). Count II seeks equitable relief under § 502(a)(3). Mr. Manning pleads Count II in the alternative and seeks relief under it only to the extent the violations and injuries alleged are not adequately remedied under § 502(a)(1)(B). (ECF No. 6 ¶ 259.) Count II asks the Court to declare unlawful and enjoin the application of Plan terms and practices that prevent the full and fair review ERISA requires. In

the alternative, it asks the Court to reform § 3.1(d). (*Id.* ¶¶ 213–215.) On October 23, 2026, Defendants moved under Rule 12(b)(6) to dismiss Count II with prejudice. They did not move against Count I. (ECF No. 13; ECF No. 13-1 at 10.)

## IV. Argument

Defendants argue that Count I supplies an adequate remedy, that the Court cannot rewrite the Plan, that § 3.1(d) does not conflict with ERISA, and that Count II does not plausibly allege a breach of fiduciary duty. Each argument fails.

### A. Count I cannot remedy the enforcement of a Plan term that ERISA forbids, so relief under § 502(a)(3) is appropriate

Section 502(a)(3) authorizes a participant to sue "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Where Congress elsewhere provided adequate relief for a beneficiary's injury, a participant cannot also obtain relief under § 502(a)(3). *Varity*, 516 U.S. at 515. But relief elsewhere is adequate only if the plaintiff's "injury is redressable elsewhere in ERISA's scheme." *Korotynska*, 474 F.3d at 106. As the Fourth Circuit explained, § 502(a)(3) exists "to authorize individual equitable relief, not where plan administrators have made a mistake on an individual benefits determination, but where, as in *Varity*, ERISA's other provisions do not afford adequate relief." *Id.* at 106–08.

Section 502(a)(1)(B) cannot reach the injury that Count II targets. That provision permits a participant to recover benefits "due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). It enforces plan terms. It does not change them. *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). Defendants accept that premise. They argue that Mr. Manning "cannot qualify for those benefits under the Plan as written" because no Neutral Physician has found him totally and permanently disabled. (ECF No. 13-1 at 10.) They add that "[i]f Plaintiff believes the

Neutral Rule was misapplied to him, that is a claim for benefits." (*Id.*) But Count II alleges something different. It alleges that § 3.1(d), applied exactly as written, makes Mr. Manning ineligible "regardless of" any other fact, statement, or determination in the record, and that ERISA forbids a plan to condition benefits that way. (ECF No. 6 ¶¶ 106–107, 254–256.) A court that must apply § 3.1(d) as written in Count I cannot redress an injury caused by § 3.1(d) itself. That injury is not "redressable elsewhere in ERISA's scheme." *Korotynska*, 474 F.3d at 106.

Count II therefore does not recast a benefits claim as a fiduciary-breach claim. The two counts ask different questions. The benefits claim asks whether the Board correctly applied the Plan's terms. Count II asks whether ERISA permits the Board to enforce § 3.1(d) at all. Unlike Count I, Count II does not allege that the Board misread § 3.1(d) or misapplied it. It alleges that the term itself conflicts with ERISA. (ECF No. 6 ¶¶ 254–256.) The two counts also seek different relief. Count I seeks benefits. Count II seeks a declaration and an injunction against enforcing § 3.1(d), with reformation only in the alternative. (Id. ¶¶ 213–215.)

Defendants' own authority draws the same line. A fiduciary-breach claim is a benefits claim "where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." (ECF No. 13-1 at 21–22 (quoting *Alford v. NFL Player Disability & Survivor Benefit Plan*, No. 1:23-cv-00358-JRR, 2024 U.S. Dist. LEXIS 50025, at *43 (D. Md. Mar. 20, 2024), and *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)).) Count II's challenge to § 3.1(d) falls on the other side of that line. Whether a plan may strip the named fiduciary of authority to award benefits on the full record is a question of what ERISA requires, not of what the Plan says.

*Varity* itself allowed an action under § 502(a)(3) because the plaintiffs could not proceed under § 502(a)(1). *See* 516 U.S. at 515. After *Amara*, the Fourth Circuit held that a participant

whose claim was denied because the plan did not cover her could pursue equitable remedies against the fiduciary under § 502(a)(3). *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 181–82 (4th Cir. 2012), overruled on other grounds by *Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023). This Court has gone further. It has held that when a plan term violates ERISA, a participant may first seek equitable relief under § 502(a)(3) to correct the term, and then seek benefits under § 502(a)(1)(B) under the corrected terms. *See England*, 764 F. Supp. 2d at 780.

*England* shows why equitable relief can be the necessary first step toward a benefits claim. The *England* plaintiffs alleged that the vesting terms of their Retirement Awards violated ERISA and "therefore must be reformed to comply with ERISA's minimum vesting requirements." 764 F. Supp. 2d at 763–64. Under § 502(a)(3), they sought a declaration that the vesting terms violated 29 U.S.C. § 1053(a), an injunction against administering the Awards in a manner that violated that provision, reformation of the Awards, and recalculation of benefits under ERISA-compliant terms. They separately sued under § 502(a)(1)(B) for the refusal to pay benefits under the Awards as written. *Id.* at 779. On a motion to dismiss, the defendants argued that the equitable claim was, in substance, a demand for money, and that the plaintiffs could not pursue both provisions at once. The court rejected both arguments. It first held that § 502(a)(1)(B) could not supply the relief the plaintiffs needed:

> Under ERISA Section 502(a)(1)(B)'s plain language, that section only provides relief to a plaintiff who seeks "to recover benefits due to him *under the terms of his plan*, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" Therefore, Plaintiffs do not have any right, under the plain terms of Section 502(a)(1)(B), to seek recovery under vesting provisions *not* contained in their Retirement Awards. Further, reformation of the terms of a contract is a form of equitable relief.

*Id.* at 777–78 (emphasis in original) (citation omitted). The court then rejected the defendants' reading of *Korotynska*. That case, the court explained, "clearly involved a plaintiff's attempt to 'repackage' a Section 502(a)(1)(B) claim for denial of benefits into a claim for injunctive relief

under Section 502(a)(3).” *Id.* at 779. Its “fairest reading” is that a plaintiff who “can obtain complete relief under Section 502(a)(1)(B), for example, where he seeks only the payment of benefits under the terms of his ERISA plan,” cannot also sue under § 502(a)(3). *Id.*

The *England* plaintiffs’ claims were different. Their § 502(a)(3) claim was “based on Defendants’ failure to bring the Retirement Awards into compliance with ERISA’s vesting requirements,” while their § 502(a)(1)(B) claim was based on the refusal to pay benefits “consistent with the terms of those awards.” *Id.* Because neither provision alone could make the plaintiffs whole, the court allowed them to proceed in sequence:

> Plaintiffs cannot receive complete and adequate relief under Section 502(a)(1)(B) alone, because that Section only allows a beneficiary “to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.” Nor can they receive complete relief under Section 502(a)(3), which does not allow for payment of damages. Plaintiffs are entitled to first pursue a claim under Section 502(a)(3) for reformation of the terms of the Retirement Awards, and then to pursue a claim under Section 502(a)(1)(B) for recalculation and distribution of benefits due under the ERISA-complaint [sic] terms of the revised awards.

*Id.* at 780. The same sequence applies here. Defendants read § 3.1(d) to make a Neutral Physician’s finding of total and permanent disability a condition of benefits, “regardless of” any other evidence in the record. (*See* ECF No. 6 ¶¶ 106–107, 254–256.) If that reading controls, Count I can do no more than apply § 3.1(d), even if § 3.1(d) violates ERISA. Like the *England* plaintiffs, Mr. Manning would then have no right under § 502(a)(1)(B) to benefits under terms “not contained in” the Plan. 764 F. Supp. 2d at 777–78. Equitable relief against § 3.1(d) would be the predicate for any recovery of benefits. That relief would not itself award benefits. A declaration and injunction barring enforcement of § 3.1(d) to the extent it conflicts with ERISA, or reformation in the alternative, would establish only that Mr. Manning’s claim must be decided on the full record under the Plan’s lawful terms. Mr. Manning would still have to prove, under § 502(a)(1)(B), that he is totally and permanently disabled within the meaning of those terms.

Count II therefore seeks no second recovery. It seeks the predicate for the recovery that, on Defendants' reading, the Plan as written forecloses.

Nor does it matter that Count II ultimately aims at benefits. The *England* plaintiffs sought reformation so they could recover benefits under corrected terms, and they described the payment of benefits as a "necessary consequence[]" of the injunctive relief they sought. 764 F. Supp. 2d at 776. The court still allowed the equitable claim to proceed, because § 502(a)(1)(B) alone could not provide complete relief. *Id.* at 780.

Neither *Korotynska* nor *Alford* holds otherwise. The *Korotynska* plaintiff challenged her insurer's claims procedures, not the lawfulness of a plan term, and the Fourth Circuit found that her allegations were "routinely taken up in appeals of benefits denials." [1] 474 F.3d at 106–08. The § 502(a)(3) count dismissed in *Alford* was a fiduciary-breach claim under ERISA §§ 102, 404, and 405. It attacked how the fiduciaries handled claims, including their reliance on Neutral Physicians, and what they told players about the Plan. As Defendants describe it, *Alford* held that claims-procedure theories under ERISA § 503 would yield no "additional or different remedy not otherwise available through Count I." (ECF No. 13-1 at 23 (quoting *Alford*, 2024 U.S. Dist. LEXIS 50025, at *59).) *Alford* did not decide whether a court reviewing a benefits denial may disregard a Plan term as contrary to ERISA. The *Alford* plaintiffs conceded that no Neutral Physician had found any of them disabled and that they were not entitled to benefits under the Plan's express terms. *Alford*, 2024 U.S. Dist. LEXIS 50025, at *21–23. They argued instead that

[1] Defendants' footnote 3 (ECF No. 13-1 at 20 n.3) answers an argument Mr. Manning does not make. Mr. Manning does not contend that *Amara* overruled *Korotynska*. The cases collected there dismissed § 502(a)(3) claims that sought to remedy the benefit denials themselves. *See, e.g., Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*, 505 F. Supp. 3d 594, 607 (E.D.N.C. 2020). Count II instead challenges the lawfulness of a Plan term. *See Suchin v. Fresenius Med. Care Holdings, Inc.*, 715 F. Supp. 3d 703, 713 (D. Md. 2024) (*Korotynska* addresses attempts to "repackage" a § 502(a)(1)(B) claim).

the Board abused its discretion, and this Court allowed that claim to proceed because they plausibly alleged, among other things, that the Board did not consider the entire record and inappropriately relied on Neutral Physicians' conclusions. *Id.* at *24–27. No one asked the Court to decide whether § 3.1(d) itself may be enforced consistent with § 1133, and the Court did not decide it. Nor does the *Alford* passage on which Defendants rely make misrepresentation a threshold requirement. That passage offers a misleading plan description only "for example," as one reason a participant without a claim under the plan's terms might deserve equitable relief.

A plan term that ERISA forbids is a different and independent reason, and it is the reason Count II asserts. The governing test, as Defendants acknowledge, asks whether the violation is one "that § 502 does not elsewhere adequately remedy," not whether the plaintiff was misled. *Varity*, 516 U.S. at 512; *see England*, 764 F. Supp. 2d at 779–80. Defendants also concede that a § 502(a)(3) claim may proceed alongside a benefits claim where it "seeks to remedy a separate and distinct injury, based at least in part on different facts, such as an allegation that the plaintiff is not covered by the plan and therefore cannot sue for benefits." (ECF No. 13-1 at 23.) As to § 3.1(d), Defendants' own position places Mr. Manning in that category. Defendants read § 3.1(d) to bar benefits whenever no Neutral Physician finds the player disabled. On that reading, which Mr. Manning disputes, nothing is due to him under the Plan as written. The different facts are the text and operation of § 3.1(d) itself.

Defendants respond that every request in Count II "serves a single goal: an award of T&P benefits." (ECF No. 13-1 at 10.) The question under *Korotynska* is not what the plaintiff ultimately hopes to obtain. The question is whether ERISA's other provisions reach the injury. Count II seeks no money and disclaims any duplicative recovery of benefits. (ECF No. 6 ¶¶ 216, 259.) It seeks a declaration and an injunction governing whether the Board may apply § 3.1(d) to

Mr. Manning's claim, including in any decision on his appeal and any future review of his continuing entitlement to benefits. (*Id.* ¶¶ 213–215.)

If Defendants contend in reply that the Court may decline to enforce § 3.1(d) in Count I, the Court should so hold. Mr. Manning would then have a forum in which to test the lawfulness of § 3.1(d). What Defendants cannot do is claim that Count I is a complete remedy while insisting that Count I must enforce the very term Mr. Manning challenges.

Defendants also contend that the only remedy for a claims-procedure violation under Count I is a remand. (ECF No. 13-1 at 23.) *Cogdell* shows that remand is not the only remedy. *Cogdell v. Reliance Standard Life Ins. Co.*, 169 F.4th 238 (4th Cir. 2026). There, the administrator missed its appeal deadline, the district court decided entitlement *de novo* and awarded benefits, and the Fourth Circuit affirmed the award rather than remanding. *Cogdell*, 169 F.4th at 258. Defendants' position also confirms that Count I is inadequate. On a remand, the Board would apply § 3.1(d) as written. Defendants say no Neutral Physician has made the finding that § 3.1(d) requires. (ECF No. 13-1 at 14.) A remand would therefore return Mr. Manning to the same term Count II challenges.

Nor does Mr. Manning concede that he fails the Plan's terms. Defendants say he does (see ECF No. 13-1 at 26 (citing ECF No. 6 ¶¶ 105–107, 254)), but the Complaint alleges the opposite. Mr. Manning alleges that he "has satisfied all conditions necessary to establish entitlement to T&P benefits under the lawful terms of the Plan." (ECF No. 6 ¶ 217.) He alleges that he is "Total and Permanently Disabled within the meaning of the Plan" (*id.* ¶ 219) and that he "satisfies the substantive requirements for T&P disability under the Plan" (id. ¶ 231). What the Complaint describes is how Defendants apply § 3.1(d): as making a favorable Neutral Physician determination "an absolute prerequisite" to benefits, regardless of the other evidence.

(Id. ¶ 214.) Describing how Defendants apply a term does not concede that the term is lawful or that it must control the outcome.

Mr. Manning pleads Count II only to the extent Count I does not adequately remedy the violations alleged. Federal Rule of Civil Procedure 8(d)(2) permits Mr. Manning to plead Count II in the alternative, and he has done so. (ECF No. 6 ¶ 259.) The Fourth Circuit has confirmed that ERISA plaintiffs may do exactly that. A plaintiff "who prevails in a claim for benefits under Subsection (a)(1)(B) may not *also* obtain other relief under Subsection (a)(3)." *Hayes*, 60 F.4th at 855 (citing *Varity*, 516 U.S. at 512–15, and *Korotynska*, 474 F.3d at 102–03). "But Federal Rule of Civil Procedure 8(a)(3) specifically permits pleading 'in the alternative,' so nothing would have prevented plaintiff from suing under both provisions." *Id.*; *accord Rose*, 80 F.4th at 495 n.4 (quoting *Hayes*). *Hayes* supports pleading both claims while the adequacy of relief under Count I remains unresolved. Mr. Manning seeks no double recovery. Count I asserts that he is entitled to benefits. Count II seeks equitable relief against enforcement of § 3.1(d) only to the extent Count I cannot adequately remedy that alleged violation. If equitable relief is necessary before benefits can be recovered under lawful Plan terms, Mr. Manning would still have to establish entitlement to those benefits under § 502(a)(1)(B), as explained above. Defendants cannot insist that § 3.1(d) forecloses benefits under the Plan as written and also ask the Court to dismiss the only claim that reaches § 3.1(d). Since *Hayes* and *Rose*, several courts in the Fourth Circuit have continued to permit plaintiffs to plead in the alternative. *See*, *e.g.*, *Kelly v. Altria Client Servs., LLC*, No. 3:23-cv-725-HEH, 2024 U.S. Dist. LEXIS 241229, at *14 (E.D. Va. Aug. 1, 2024)[2]; *Paul v. Blue Cross Blue Shield of N.C.*, 725 F. Supp. 3d 505, 517 (E.D.N.C.

---

[2] The *Kelly* case eventually made its way to the Fourth Circuit, where the Appellate Court reviewed ***both*** plaintiff's claim for benefits under (a)(1)(B) ***and*** her breach of fiduciary duty claim under (a)(3). *Kelly v. Altria Client Servs., LLC*, 186 F.4th 174, 187 (4th Cir. 2026).

2024) (noting *Hayes* and *Rose* have abrogated earlier cases that held a claimant could not bring simultaneous (a)(3) and (a)(1)(B) claims).

### B. Section 502(a)(3)(A) authorizes the Court to enjoin enforcement of a Plan term that violates ERISA, and no fraud or mistake is required

Defendants argue that the Court cannot rewrite the Plan's collectively bargained terms because Mr. Manning alleges no fraud or mistake that could support reformation. (ECF No. 13-1 at 11.) That argument addresses the wrong remedy. Mr. Manning's primary request is not that the Court rewrite § 3.1(d). He asks the Court to declare that § 3.1(d) may not be enforced against him to the extent it conflicts with ERISA, and to enjoin that enforcement. (ECF No. 6 ¶ 215.) Section 502(a)(3)(A) authorizes exactly that relief. It permits a participant to sue "to enjoin any act or practice which violates any provision of this subchapter." 29 U.S.C. § 1132(a)(3)(A). The provision contains no fraud or mistake requirement. Even the alternative remedy of reformation does not require fraud or mistake when a plan term violates ERISA. The Fourth Circuit will "enforce the plain language of an insurance policy unless it is in violation of ERISA," and when a policy "fails to incorporate the minimum protections required by ERISA," the court "will require that the policy be **rewritten** to incorporate such protections." *Canada Life Assur. Co. v. Estate of Lebowitz*, 185 F.3d 231, 235 (4th Cir. 1999) (emphasis added). *See also White v. Sun Life Assur. Co.*, 488 F.3d 240, 247 (4th Cir. 2007) ("Plan drafters enjoy broad latitude, but they cannot write over the constraints established by federal law."); *Davis v. Burlington Indus., Inc.*, 796 F. Supp. 866, 871 (E.D.N.C. 1991) (plan amendments that violated ERISA were unenforceable); *Chao v. Malkani*, 216 F. Supp. 2d 505, 518 (D. Md. 2002) (defendant's interpretation of the plan violated ERISA's regulations); *Tillery v. Wakemed Health & Hosps.*, 819 F. Supp. 3d 442, 449 (E.D.N.C. 2026) (administrators only follow the terms of the plan "insofar as such documents and instruments are consistent with ERISA's other provisions.");

*Enstrom v. SAS Inst. Inc.*, 820 F. Supp. 3d 410, 423 (E.D.N.C. 2026) (same); *Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 903 (E.D. Va. 2025) ("If either the Plan's terms or Defendant's administration of the Plan violates ERISA, Defendant may not lean on its adherence to the Plan as a shield from liability.").

No amount of collective bargaining can rewrite the statutes Congress has enacted or the mandatory regulations Congress empowered the Department of Labor to promulgate.

The Second Circuit has likewise held that § 502(a)(3) authorizes reformation to remedy an ERISA violation "even in the absence of mistake, fraud, or other conduct traditionally considered to be inequitable." *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 748 (2d Cir. 2019). Defendants' contrary rule would produce results ERISA cannot tolerate. A plan could provide that a denial need not explain why it disagrees with the claimant's treating physicians, despite 29 C.F.R. § 2560.503-1(j)(6)(i)(A). *Lebowitz* forecloses that reading. When a plan term falls below the statutory floor, the court enforces the floor.[3] Reformation is pleaded only in the alternative. (ECF No. 6 ¶ 214.)

Injunctive and declaratory relief are core equitable remedies under § 502(a)(3). In *Amara*, the Supreme Court held that § 502(a)(1)(B) did not authorize a court to change plan terms. *Amara*, 563 U.S. at 438. The Court then explained that § 502(a)(3) could supply relief for the ERISA violations at issue and identified reformation, estoppel, and injunctive relief as potentially appropriate equitable remedies. *Id*. at 438–42. That holding also answers any

[3] Defendants rely on *Smith v. NFL Player Disability & Neurocognitive Benefit Plan*, No. 1-22-CV-00928, 2024 WL 722594 (W.D. Tex. Jan. 9, 2024). (ECF No. 13-1 at 27-28.) *Smith* reviewed the Board's denial for abuse of discretion and held only that the denial was consistent with the Plan's terms. Defendants identify nothing in *Smith* addressing whether § 3.1(d) conflicts with § 1133. Mr. Manning alleges that the Board missed its appeal deadline, which forfeits deference. See *Cogdell*, 169 F.4th at 253. And whether a Plan term conflicts with ERISA is a question of law under any standard of review.

suggestion that *Lebowitz* lets a court rewrite a plan term inside a benefits claim, which would make Count II duplicative. *Lebowitz* predates *Amara*. After *Amara*, the power to rewrite a term that falls below ERISA's floor comes from equity under § 502(a)(3), and that is Count II. The Fourth Circuit has likewise recognized that a participant's allegations of fiduciary breach support standing to seek declaratory and injunctive relief under § 502(a)(3) without a personal financial loss. *Peters v. Aetna Inc.*, 2 F.4th 199, 221 (4th Cir. 2021). Defendants' fraud-or-mistake argument draws on *Amara*'s discussion of reformation. That discussion says nothing about an injunction against enforcing a term that violates the statute.

An injunction against enforcing an unlawful term does not rewrite the Plan. Defendants agree that ERISA requires a fiduciary to follow plan terms that are consistent with ERISA. (ECF No. 13-1 at 33 (citing 29 U.S.C. § 1104(a)(1)(D)).) A fiduciary therefore may not follow a term that is inconsistent with ERISA. The Supreme Court reads § 1104(a)(1)(D) the same way. That provision "makes clear that the duty of prudence trumps the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014); see also 29 U.S.C. § 1110(a) (provisions purporting to relieve a fiduciary of responsibility for ERISA duties are "void as against public policy"). An order barring the Board from applying § 3.1(d) against Mr. Manning, to the extent § 3.1(d) violates ERISA, leaves the bargained text in place and enforces the limit Congress wrote into § 1104(a)(1)(D). That the NFLPA and the Management Council adopted § 3.1(d) does not change the analysis. (ECF No. 13-1 at 33.) Defendants cite no authority holding that a collectively bargained plan term is exempt from ERISA's requirements.

**C. The Complaint plausibly alleges that § 3.1(d) conflicts with ERISA's full-and-fair-review requirements**

Defendants contend that the Neutral Rule does not conflict with ERISA because decisions about what benefits a plan will provide, and to whom, are plan-design decisions. (ECF

No. 13-1 at 33.) That contention asks the Court to resolve the merits on a motion to dismiss. It also inverts the governing hierarchy. The claims regulation "sets forth **minimum requirements** for employee benefit plan procedures." 29 C.F.R. § 2560.503-1(a) (emphasis added). And plans must "strictly adhere" to the text of those regulations. *Cogdell*, 169 F.4th at 248. Section 1133 of ERISA itself directs every plan to provide a full and fair review "[i]n accordance with regulations of the Secretary," so the claims regulation defines what the statute requires. 29 U.S.C. § 1133. Those requirements keep the process "non-adversarial" and protect claimants from "arbitrary or unprincipled decision-making." *Cogdell*, 169 F.4th at 247 (quoting *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 236 (4th Cir. 1997)). A plan may give participants more than that floor, but a court will not enforce a term that gives them less. *Lebowitz*, 185 F.3d at 235. Mr. Manning need only plausibly allege a conflict. He has done so in four ways.

**First**, § 3.1(d) gives dispositive authority to physicians who are not the named fiduciary. ERISA requires every plan to afford a reasonable opportunity for "a full and fair review by the appropriate named fiduciary" of a denied claim. 29 U.S.C. § 1133(2). The Board is the Plan's named fiduciary and administrator, and it decides claims and appeals. (ECF No. 6 ¶¶ 10, 16–17.) Yet under § 3.1(d), a player is ineligible "regardless of" any other fact, statement, or determination in the record unless a Neutral Physician finds him totally and permanently disabled. (*Id.* ¶¶ 106–107.) The Board can deny benefits on the full record, but it cannot grant them on the full record. A review that can only confirm a denial is not a full and fair review by the named fiduciary.

**Second**, ERISA's claims regulation requires an appeal review that takes into account all information the claimant submits. 29 C.F.R. § 2560.503-1(h)(2)(iv). That regulation states that a "Full and Fair Review" requires an administrator to conduct a review

> that takes into account **all comments, documents, records, and other information submitted by the claimant** relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

*Id.* (emphasis added). In contrast, the NFL Plan is written to specifically *exclude* all comments, documents, and other information submitted by the claimant unless a doctor selected by the Plan has already signed off on the claim. On appeal, Mr. Manning submitted an independent Functional Capacity Evaluation, a forensic neuropsychological evaluation, a vocational evaluation, and an independent neurological examination. Each concluded that he cannot sustain employment. (ECF No. 6 ¶¶ 169–177.) Under § 3.1(d), none of that evidence can change the outcome unless a Neutral Physician agrees. (*Id.* ¶ 109.) Evidence that the fiduciary is forbidden to act on has not been taken into account in any meaningful sense. The Fourth Circuit has held that a fiduciary that fails to consider readily available material evidence does not provide the full and fair review § 1133 requires. *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15 (4th Cir. 2014). Section 3.1(d) goes further. It **forbids** the fiduciary to act on material evidence already in the record, "regardless of" how strong that evidence is. (ECF No. 6 ¶ 107.)

**Third**, *Nord*, on which Defendants rely, cuts against them. *Nord* held that ERISA does not require plan administrators to give special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). In the same passage, the Court held that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* Section 3.1(d) compels that refusal whenever no Neutral Physician agrees with the treating physician. The claims regulation now makes the point explicit for disability claims filed after April 1, 2018. An adverse decision on review must include "an explanation of the basis for disagreeing with or not following" the views of the claimant's treating health care professionals and any Social Security disability

determination the claimant submits. 29 C.F.R. § 2560.503-1(j)(6)(i)(A), (C); see id. § 2560.503-1(p)(3). The initial decision carries the same requirement. *Id.* § 2560.503-1(g)(1)(vii)(A)(1).

A duty to explain disagreement with a treating physician presupposes that the fiduciary weighs that physician's opinion. A rule that no treating opinion can ever establish disability does not disagree with the opinion after weighing it. It excludes the opinion before any weighing begins. The result is not a discussion of disagreement. It is a rule against ever having to agree with a treating physician, no matter what the treating record shows. Mr. Manning does not argue that the Board must defer to his treating physician. He argues that the Board must be free to credit that physician and must explain itself when it does not. Section 3.1(d) makes that explanation beside the point, because no treating opinion can change the outcome. Mr. Manning's treating neurologist, Dr. Graham Garrison, is board certified with fellowship training in Brain Injury Medicine. He concluded that Mr. Manning is totally and permanently disabled. (ECF No. 6 ¶¶ 33–34.) The Neutral neurologist, Dr. Hoyle, said he was unable to determine disability, and he reached that conclusion without reviewing Dr. Garrison's records. (*Id.* ¶¶ 92–93.) Under § 3.1(d), the Board could not credit Dr. Garrison's opinion no matter how reliable it found that opinion to be.

**Fourth**, the plan-design label does not save § 3.1(d). Defendants rely on *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996), for the principle that sponsors decide what benefits a plan will provide. (ECF No. 13-1 at 33.) Mr. Manning does not dispute that sponsors may define the benefit. But § 3.1(d) does more than define the benefit. It makes a favorable outcome of a procedural step, the Neutral Physician examination, a necessary condition of eligibility. If that label were enough, any plan could avoid § 1133 by recasting a procedural requirement as an eligibility condition. Defendants' own description of the Plan shows the problem. The Plan

separately requires the DICC or the Board to determine, after review of the Neutral Physician reports and the entire administrative record, that the player is substantially unable to engage in any occupation. (ECF No. 13-1 at 12.) Section 3.1(d) ensures that the Board's review of the entire record can matter only on the way to a denial.

Defendants also emphasize that Neutral Physicians certify their impartiality and are paid a flat fee. (*Id.*) Mr. Manning's challenge to § 3.1(d) does not depend on bias. Even an impartial physician is not the named fiduciary, and § 3.1(d) gives that physician's inability to decide the force of a denial. That is what happened here. Two Neutral Physicians stated that they were unable to determine whether Mr. Manning was disabled, and Defendants converted that uncertainty into an automatic denial. (ECF No. 6 ¶¶ 88, 92, 108.) Defendants cite no controlling decision holding that a provision like § 3.1(d) satisfies § 1133. Their plan-design authorities address what benefits a plan may offer. They do not address whether a plan may divest the named fiduciary of authority to grant those benefits on the full record. At a minimum, the Complaint states a plausible claim that § 3.1(d) violates ERISA, and that question should be decided on a developed record.

### D. Count II plausibly alleges that the Board's enforcement of § 3.1(d) is fiduciary conduct

Defendants argue that the NFLPA and the Management Council, not the Board, adopted the Neutral Rule, so Count II challenges plan design rather than fiduciary conduct. (ECF No. 13-1 at 33.) The argument fails for two independent reasons:

**First**, Count II does not depend on a fiduciary breach, so the capacity in which the sponsors adopted § 3.1(d) does not matter. Section 502(a)(3)(A) authorizes a participant "to enjoin any act or practice which violates any provision" of ERISA. 29 U.S.C. § 1132(a)(3)(A). The provision violated here is § 1133, which commands that "every employee benefit plan **shall**"

afford a claimant whose claim has been denied a reasonable opportunity for a full and fair review. 29 U.S.C. § 1133 (emphasis added); see also 29 C.F.R. § 2560.503-1(b). That duty belongs to the Plan. It does not turn on who drafted § 3.1(d) or in what capacity. Section 502(a)(3) focuses "on redressing the 'act or practice which violates any provision of [ERISA],'" not on the status of the defendant. *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000). Liability under § 502(a)(3) "does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Id.* at 245. Defendants cannot avoid § 1133 by calling § 3.1(d) an eligibility condition, for the reasons stated in Part C. Enforcing § 3.1(d) against Mr. Manning violates § 1133, and § 502(a)(3)(A) lets the Court enjoin that enforcement.

**Second**, even if Count II required a fiduciary breach, it pleads one. Mr. Manning does not challenge the adoption of § 3.1(d). He challenges the Board's enforcement of § 3.1(d) in adjudicating his claim. The Complaint alleges that the Board is the Plan Administrator and a named fiduciary, and that it acts as a fiduciary when it decides claims and appeals and interprets and applies Plan terms. (ECF No. 6 ¶¶ 10, 16–17.) Defendants also argue that following the Plan is not a breach. (ECF No. 13-1 at 33.) That is true only when the Plan term is consistent with ERISA, as Defendants acknowledge. (*Id.*) A fiduciary that enforces a term inconsistent with ERISA departs from § 1104(a)(1)(D), and that is the breach Count II alleges. (ECF No. 6 ¶¶ 249, 256.) *Dudenhoeffer* illustrates the line. The fiduciaries there invoked the trust-law rule that a settlor may waive the prudence standard through the trust instrument, and the Court nonetheless held that ERISA subordinates plan instructions to ERISA's requirements. *Dudenhoeffer*, 573 U.S. at 421. *Lockheed* protects a sponsor's decision to adopt a term. It does not shield a fiduciary's later decision to enforce that term against a participant when ERISA forbids it.

Defendants next argue that the Board has not decided Mr. Manning's appeal and so has not relied on any Neutral Physician report. (ECF No. 13-1 at 34.) That argument ignores the Complaint. The deadline to decide the appeal was August 17, 2026. (ECF No. 6 ¶ 187.) Before that date, Defendants admitted they had not even reviewed the reports of the Neutral Physicians they had commissioned, and they punted the decision to the Board's November 11, 2026 meeting. (*Id.* ¶¶ 188–191.) The Complaint alleges that the missed deadline means Mr. Manning's administrative remedies are deemed exhausted and his appeal is deemed denied without the exercise of discretion by an appropriate fiduciary. (*Id.* ¶¶ 201–208.) The delay also does not lessen the threat of injury. When the Board meets, it will apply its unlawful interpretation of § 3.1(d). Count II seeks declaratory and injunctive relief against that enforcement, including in any future review of Mr. Manning's eligibility.

The Plan remains a proper party to Count II. Defendants under § 502(a)(3) need not be fiduciaries, and the Plan is a proper party to declaratory and injunctive relief that governs its administration. *See Harris Trust*, 530 U.S. at 246.

**E. Mr. Manning does not oppose dismissal without prejudice of the claims-handling theories, which remain before the Court under Count I**

Count II also alleges that Defendants failed to ensure a prudent and impartial claims process, relied on Neutral Physicians without ensuring appropriate expertise or complete records, failed to maintain a complete administrative record, and barred a representative from attending or recording examinations. (ECF No. 6 ¶¶ 251–252.) Defendants argue that these allegations concern how the claim was handled and that the Court will consider them under the *Booth* factors in Count I. (ECF No. 13-1 at 22.) Mr. Manning accepts that representation. He does not oppose dismissal of those claims-handling theories from Count II without prejudice, on the understanding that the Court will consider the underlying facts when it reviews the denial under

Count I. This concession narrows Count II to the single question Count I cannot answer: whether § 3.1(d) may lawfully be enforced against him.

**F. Any dismissal should be without prejudice and with leave to amend**

Defendants ask for dismissal with prejudice because, they say, each defect is legal and cannot be cured by amendment. (ECF No. 13-1 at 11.) The Court should deny that request. Rule 15(a)(2) directs courts to "freely give leave when justice so requires," and leave is properly denied only for prejudice, bad faith, or futility. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (en banc). None of those grounds applies.

A dismissal under *Korotynska* would also rest on the present adequacy of Count I. If Count I is later resolved on the ground that § 3.1(d) bars benefits, or on Defendants' reserved exhaustion defense, that premise will fail. Mr. Manning should then be free to renew his claim for equitable relief. At a minimum, any dismissal should be without prejudice, and the Court should grant Mr. Manning 21 days to file an amended complaint. An amended Count II would expressly plead the § 502(a)(3)(A) challenge to § 3.1(d) independently of any fiduciary breach and, alternatively, as a fiduciary-breach theory against the Board under § 1104(a)(1)(D). Both theories would remain subject to the limitation that Count II seeks relief only to the extent Count I does not provide an adequate remedy.

## V. Conclusion

Defendants can't have it both ways. They say Count I is a complete remedy, and they say § 3.1(d) bars benefits under the Plan as written. If they're right about § 3.1(d), Count I can't reach the injury Count II addresses: the enforcement against Mr. Manning of an unlawful Plan term that forecloses benefits regardless of the record and conflicts with ERISA's full-and-fair-

review guarantee. Section 502(a)(3)(A) supplies the remedy Congress provided for that injury. Count II asks whether ERISA permits a plan to tell a disabled player that, unless one of its doctors says yes, he loses. Defendants' motion asks the Court never to answer that question.

Mr. Manning therefore respectfully requests that the Court enter an order that:

(a) denies the Motion as to Count II's challenge, under 29 U.S.C. §§ 1132(a)(3) and 1104(a)(1)(D), to the enforcement of Plan § 3.1(d) against Mr. Manning;

(b) dismisses without prejudice the claims-handling theories in Count II, the loyalty theory, and any fiduciary-breach claim against the Plan as an entity, which Mr. Manning does not oppose;

(c) in the alternative, if the Court grants the Motion in any further respect, dismisses only the affected portions of Count II without prejudice and grants Mr. Manning 21 days from the date of the Court's order to file an amended complaint; and

(d) directs Defendants to answer Count I within fourteen days after the Court rules on the Motion, a timeline Mr. Manning does not oppose.

Respectfully submitted,

BY: *<u>/s/ Damon R. Miller</u>*

Damon R. Miller (No. 30581)
Benjamin W. Glass, III & Assoc., PC
3998 Fair Ridge Drive, #250
Fairfax, VA 22033
703-591-9829 phone | 703-783-0686 fax
dmiller@BenGlassLaw.com

*Counsel for Plaintiff Tashawn Manning*

**CERTIFICATE OF SERVICE**

I hereby certify that I have, on November 20, 2026, filed a copy of the foregoing document electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

BY: *\/s/ Damon R. Miller*

Damon R. Miller (No. 30581)
Benjamin W. Glass, III & Assoc., PC
3998 Fair Ridge Drive, #250
Fairfax, VA 22033
703-591-9829 phone | 703-783-0686 fax
dmiller@BenGlassLaw.com

*Counsel for Plaintiff Tashawn Manning*